IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| FORREST GRAY, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. CBD-17-1410 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| | ) | |
|    Acting Commissioner, | ) | |
|    Social Security Administration | ) | |
| | ) | |
|    Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

Forrest Gray ("Plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). Commissioner denied Plaintiff's claim for a period of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and for Supplemental Security Income Benefits ("SSI") under Title XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") (ECF No. 14) and Commissioner's Motion for Summary Judgment ("Commissioner's Motion") (ECF No. 20). The Court has reviewed the motions, related memoranda, and the applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below, the Court hereby **DENIES** Plaintiff's Motion and **GRANTS** Commissioner's Motion.

I.     **Procedural Background**

On August 20, 2013, Plaintiff filed for DIB and SSI, alleging disability beginning March 1, 2011. R. 20. Plaintiff alleged disability due to diabetes, high blood pressure, high cholesterol,

1

and his "bad legs and back." R. 179. An administrative hearing was held on February 22, 2016, during which Plaintiff amended his alleged onset date to August 20, 2013. On April 22, 2016, the claim was denied. R. 34. Plaintiff sought review by the Appeals Council, which concluded on March 24, 2017 that there was no basis for granting the Request for Review. R. 1.

## II. Standard of Review

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2015). The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law. *Id.* ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *see also Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). "In other words, if the ALJ has done his or her job correctly and supported the decision reached with substantial evidence, this Court cannot overturn the decision, even if it would have reached a contrary result on the same evidence." *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 515 (D. Md. 2002). Substantial evidence is "more than a mere scintilla." *Russell*, 440 F. App'x, at 164. "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Hays*, 907 F.2d, at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456 (citations omitted); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § 205(g) precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"). The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d, at 1456 (citations omitted). If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

The Court shall find a person legally disabled under Title II and Title XVI if he is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). The Code of Federal Regulations outlines a five-step process that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (2012). If he is doing such activity, he is not disabled. If he is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § [404.1509/416.909], or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2012). If he does not have such impairment or combination of impairments, he is not disabled. If he does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (2012). If he does have such impairment, he is disabled. If he does not, proceed to step four.

4) Determine whether the plaintiff retains the "residual functional capacity" ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (2012). If he can perform such work, he is not disabled. If he cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v) (2012). If he can perform other work, he is not disabled. If he cannot, he is disabled.

Plaintiff has the burden to prove that he is disabled at steps one through four, and Commissioner has the burden to prove that Plaintiff is not disabled at step five. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

The RFC is an assessment that represents the most a claimant can do despite any physical and mental limitations on a "regular and continuing basis." 20 C.F.R. §§ 404.1545(b)-(c), 416.945(b)-(c). In making this assessment, the ALJ must consider all relevant evidence of the claimant's impairments and any related symptoms. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ must present a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184 at *7 (S.S.A.). "Ultimately, it is the duty of the [ALJ] reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts of evidence." *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)).

**III.     Analysis**

The ALJ evaluated Plaintiff's claim using the five-step sequential evaluation process. R. 22-34. At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful

activity since August 20, 2013. R. 22. At step two, under 20 C.F.R. §§ 404.1520(c) and 416.920(c), the ALJ determined that Plaintiff has the following severe impairments: "rotator cuff syndrome, post repair; mild degenerative disc disease of the lumbar spine; mild lumbar stenosis; and diabetes mellitus. R. 23. The ALJ stated that the listed impairments "more than minimally affect [Plaintiff's] ability to perform basic work activities," and were therefore severe within the meaning of 20 C.F.R. §§ 404.1520(c) and 416.920(c). *Id*. At step three, the ALJ determined that Plaintiff does not have an impairment or a combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. R. 24. At step four, the ALJ determined that Plaintiff has the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) "except limited to occasional lifting, no more than twenty pounds, with the right upper extremity." R. 25. The ALJ then determined that Plaintiff is not capable of performing his past relevant work as a custodian, which is defined as heavy and unskilled, because the "physical requirements of [that] job exceeded those in [Plaintiff's] residual functional capacity assessment." R. 32. At step five, however, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that accommodate Plaintiff's known limitations, and accordingly concluded that Plaintiff is not disabled within the meaning of the Social Security Act. R. 33-34.

On appeal, Plaintiff argues that the Court should enter judgment as a matter of law in his favor, or in the alternative, remand this matter to the Social Security Administration for a new administrative hearing, alleging that the ALJ erroneously assessed Plaintiff's RFC. Pl.'s Mot. 1, 3. For the reasons set forth below, the Court denies Plaintiff's Motion and grants Commissioner's Motion.

5

### A. *The ALJ did not fail to adequately address pertinent evidence.*

Plaintiff alleges that the ALJ failed to properly address pertinent evidence by failing to consider X-rays of Plaintiff's left shoulder dated March 23, 2012 which revealed "acromioclavicular hypertrophy, spurring of the acromioclavicular joint with joint space narrowing, and narrowing of the glenohumeral joint and subacromial space." Pl.'s Mot. 6 (citing R. 389). Plaintiff asserts that, in light of this X-ray evidence, the ALJ should have either incorporated a limitation on the use of Plaintiff's left upper extremity into Plaintiff's RFC or provided an explanation as to why he decided against doing so. *Id.* However, while Plaintiff is correct in noting that the ALJ did not discuss this X-ray, the Court is not persuaded that this omission constitutes reversible error by the ALJ.

When determining a claimant's RFC, the ALJ is required to assess only "*relevant* medical and other evidence." 20 C.F.R. § 404.1545(a)(3) (emphasis added). Accordingly, the ALJ "obviously need not explicitly perform a detailed analysis of every condition a person has ever had." *Reynolds v. Astrue*, No. SKG-11-559, 2012 WL 1107649, at *15 (D. Md. Mar. 30, 2012). In the instant case, the Court finds that a discussion from the ALJ of the left shoulder X-ray was unnecessary. As Commissioner notes, the shoulder X-ray was taken over a year before Plaintiff's amended alleged onset date of August, 20, 2013. R. 389. Plaintiff cites to no other evidence, either objective or subjective, to indicate that the acromioclavicular hypertrophy and arthritic changes indicated by the X-ray would have resulted in any work-related limitations during the relevant period. Indeed, Plaintiff did not claim that his left shoulder contributed to his disability either in his disability application or during his hearing before the ALJ. R. 44-55, 179. *See Corcoran v. Astrue*, No. SKG-08-913, 2009 WL 3100350, at *17-20 (D. Md. Sept. 22, 2009) (ruling that the ALJ's failure to consider plaintiff's knee injury was no more than harmless error

where plaintiff never alleged it would limit her ability to do work in either her disability application or follow-up papers submitted to the Commissioner). Considering the fact that the X-ray evidence signficiantly predates the alleged onset date and that Plaintiff provides no evidence that the X-ray report's diagnoses are relevant to determining the severity of the impairments alleged during the relevant period, the Court finds that the ALJ did not err by failing to address pertinent evidence.

    **B. *The ALJ did not erroneously evaluate the opinions of the state agency medical consultants.***

Plaintiff claims that the ALJ erroneously evaluated the opinions of the two state agency medical consultants, Dr. Singh and Dr. Harris, who evaluated Plaintiff's disability claim on behalf of Commissioner. Pl.'s Mot. 6. Plaintiff alleges that because the ALJ accorded the state agency medical consultants' opinions "great weight," R. 32, the ALJ erred when she "ignored all of their opinions in assessing the Plaintiff's residual functional capacity." Pl.'s Mot. 7. Plaintiff points in particular to the ALJ's failure to adopt the state agency consultants' conclusions on Plaintiff's RFC limitations: "limited pushing and pulling with the right upper extremity . . . limited to occasional overhead reaching with the right upper extremity . . . frequently balance . . . limited with front and lateral reaching with the right upper extremity." R. 31-32. Plaintiff further argues that the ALJ "failed to explain how the exclusion from the residual functional capacity assessment of all the limitations identified by these [state agency medical consultants] is consistent with her finding that the opinions were to be accorded 'great weight.'" Pl.'s Mot. 7. However, underlying each of these claims appears to be Plaintiff's mistaken belief that the ALJ's assignment of "great weight" to a medical opinion requires the ALJ to either adopt the opinion's RFC assessment in its entirety or explain her reasons for failing to do so. However, there is no requirement that because the ALJ has assigned an opinion "great weight," she must also adopt

7

the opinion in its entirety, or adopt all of its RFC limitations. *See, e.g., Martin v. Comm'r*, No. SAG-15-335, 2015 WL 7295593, at *4 (D. Md. Nov. 18, 2015); *see also Elsey v. Comm'r, SSA*, No. SAG-14-2457, 2015 WL 2258540, at *3 (D. Md. May 12, 2015) ("Great weight, however, is not controlling weight, and the ALJ is not required to adopt every limitation set forth in a medical opinion, simply because she assigns it great weight."). Furthermore, even though "nothing requires the ALJ to provide reasons for failing to adopt limitations concluded by the state agency consultants," the ALJ has not ignored their opinions in assessing Plaintiff's RFC, as Plaintiff alleges. *Campbell v. Colvin*, No. TMD 13-1894, 2014 WL 7357717, at *8 (D. Md. Dec. 22, 2014) (citing *Nicolls v. Astrue*, 874 F. Supp. 2d 785, 802 (N.D. Iowa 2012); Pl.'s Mot. 7. To the contrary, the ALJ articulated why her ultimate RFC assessment differed from that of the state agency consultants:

> [The state agency medical consultants] did not have an opportunity to consider the medical evidence of record from after the claimant's right shoulder surgery, including [Nurse Practitioner] Pitman's opinion that the claimant could lift up to fifty pounds occasionally. This new evidence supports the finding that the claimant is capable of performing work at the medium exertional level generally, with an additional limitation of occasional lifting of no more than twenty pounds with the upper right extremity.

R. 32. Therefore, the ALJ did not err by assigning the state agency medical consultants' opinions great weight but deciding not to adopt their conclusions regarding Plaintiff's RFC limitations.

### C. *The ALJ did not erroneously evaluate the opinion of Plaintiff's nurse practitioner.*

Plaintiff alleges that the ALJ erroneously evaluated the opinion of Plaintiff's treating nurse practitioner, Lacy Pitman ("NP Pitman"), for three reasons: (1) the ALJ "misstated Ms. Pitman's conclusions," and "failed to evaluate the actual opinion of Ms. Pitman," (2) the ALJ "did not recognize [an] obvious error" in NP Pitman's opinion, and (3) the ALJ "ignored"

8

several RFC limitations concluded by NP Pitman "although the Administrative Law Judge noted three times that she was according 'significant weight' to Ms. Pitman's conclusions." Pl.'s Mot. 8-9. The Court is not persuaded that the ALJ erroneously evaluated NP Pitman's opinion for any of the aforementioned reasons.

      1. The ALJ did not misstate NP Pitman's conclusions.

Plaintiff alleges that the ALJ erroneously evaluated NP Pitman's opinion by "misstat[ing] [NP] Pitman's conclusions." Pl.'s Mot. 8. Plaintiff argues that the ALJ erred by interpreting NP Pitman's opinion to conclude "that the Plaintiff's condition would not prohibit him from going to work on a regular basis," when, by contrast, "[NP Pitman] specifically found that the Plaintiff would **not** be able to work full time on a consistent scheduled basis at any level of exertion." *Id.* (citing R. 667) (emphasis added). Plaintiff contends that because of this alleged mischaracterization of NP Pitman's conclusions the ALJ "failed to evaluate the actual opinion of Ms. Pitman." *Id*.

As a preliminary matter, the Court finds that the ALJ has not "misstated" any of NP Pitman's conclusions in the sense that the ALJ misquoted or misrepresented any conclusions or statements from NP Pitman's opinion. Upon review of NP Pitman's "Medical Evaluation Report," Plaintiff appears to be arguing that the ALJ erred by not accepting, or by ignoring, NP Pitman's conclusion in the report that Plaintiff was not "able to <u>work full time</u> (i.e. 7-8 hours per day five per week, or the equivalent, on a consistent scheduled basis) at any level of exertion." R. 666-68; *see also* Pl.'s Mot. 8. However, Plaintiff's reliance upon NP Pitman's opinion is misplaced.

There is no requirement that the ALJ adopt a medical opinion in its entirety when it is accorded less than controlling weight. *See Martin*, 2015 WL 7295593, at *4. Moreover, even

9

for opinions that are otherwise accorded controlling weight, the ALJ is not required to give any heightened evidentiary value to legal conclusions contained therein, such as statements that a claimant is disabled or unable to work. *See Morgan v. Barnhart*, 142 F. App'x 716, 722 (4th Cir. 2005) (holding that treating physician's statements that plaintiff was "disabled" and "can't work an 8 hour day" were legal conclusions "deserving of no special weight."). Thus, in the instant case, because the ALJ accorded NP Pitman's opinion only significant weight as opposed to controlling weight, the ALJ was free to accept a portion of NP Pitman's medical conclusions, while rejecting NP Pitman's legal conclusion that Plaintiff was not able to work full time at any exertional level. Accordingly, the ALJ's use of the longitudinal record evidence in reaching a differing legal conclusion about Plaintiff's ability to work is not indicia that the ALJ misstated NP Pitman's conclusions or failed to evaluate her actual opinion.

2. The ALJ's purported failure to recognize and resolve an inconsistency in NP Pitman's report constitutes harmless error.

Plaintiff alleges that the ALJ erroneously evaluated NP Pitman's opinion by failing to "recognize [an] obvious error" in NP Pitman's medical evaluation—that NP Pitman "reported that the Plaintiff could lift and carry 11-20 pounds both occasionally and continuously, but not frequently." Pl.'s Mot. 9. Plaintiff argues that the ALJ should have considered "that if the Plaintiff was not able to lift 11-20 pounds frequently, he could not lift 11-20 pounds continuously. *Id*. The ALJ ultimately included a limitation on Plaintiff's RFC that "limited [Plaintiff] to occasional lifting, no more than twenty pounds, with the upper right extremity." R. 25. Thus, any purported failure to resolve this inconsistency in NP Pitman's report is harmless because it inures to the benefit of Plaintiff. *See Landers v. Comm'r, SSA*, No. SAG-13-1390, 2014 WL 5495202, at *3 (D. Md. Oct. 28, 2014).

3. The ALJ did not err by ignoring the limitations NP Pitman provided in her opinion.

Plaintiff alleges that the ALJ erroneously evaluated NP Pitman's opinion because "although the Administrative Law Judge noted three times that she was according 'significant weight' to Ms. Pitman's conclusions, she ignored the lifting limitations assessed, ignored the full time work limitation assessed, and ignored the standing and walking limitation . . . ". Pl.'s Mot. 9. However, Plaintiff is mistaken in believing that the assignment of "significant weight" to a medical opinion requires the ALJ to either adopt the opinion's RFC assessment in its entirety or explain her reasons for failing to do so. The ALJ is not required to adopt all conclusions from opinions that are accorded less than controlling weight. *See Martin*, 2015 WL 7295593, at *4. Furthermore, even though the ALJ need not explain her decision to reject the limitations from an opinion accorded less than controlling weight, the ALJ did not ignore NP Pitman's RFC limitations. *See Campbell*, 2014 WL 7357717, at *8 (citation omitted). The ALJ provided an explanation as to why her RFC assessment differed from NP Pitman's, stating "[t]o the extent that I concluded that the claimant has slightly different limitations in determining his residual function capacity, I based these conclusions on a consideration of the entire evidence of record available at the hearing level, which NP Pitman did not have an opportunity to consider." R. 31. Therefore, the ALJ did not erroneously evaluate NP Pitman's opinion by ignoring her RFC limitation conclusions.

Plaintiff's related argument, that the ALJ failed to explain how an individual with NP Pitman's RFC limitations on lifting, standing and walking would be capable of medium work, when the medium work requisites require heavier lifting and more standing and walking, similarly fails because the ALJ never adopted NP Pitman's RFC limitations in the first place, so the discrepancy Plaintiff alleges is irrelevant.

### D. The ALJ did not fail to provide a narrative discussion or function-by-function assessment to support her finding that Plaintiff had the RFC to perform medium work.

Plaintiff alleges that the ALJ failed to provide a function-by-function assessment to support her finding that Plaintiff had the RFC to perform medium work. In making the RFC assessment, the ALJ must consider all relevant evidence of the claimant's impairments and any related symptoms. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ likewise must present a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184 at *7 (S.S.A.).

In the instant case, the ALJ discussed in narrative form and in great detail the medical evaluations and reports of the two state agency medical consultants, NP Pitman, Physician's Assistant Crapster, Drs. Hertz, Bruney, Gelfand, Olkaba, as well as Plaintiff's physical therapy reports, objective medical tests, treatments, and hearing testimony. R. 25-32. The ALJ also assessed Plaintiff's credibility with specific references to which statements she found to be less than credible and why. *Id*. Finally, the ALJ resolved material inconsistencies in the record, such as the differing RFC assessments provided by the state agency medical consultants and NP Pitman, by noting that NP Pitman's opinion occurred after Plaintiff's shoulder surgery. R. 32. The Court thus finds the ALJ provided an adequate narrative discussion and function-by-function assessment to support her findings on Plaintiff RFC.

## IV. Conclusion

Based on the foregoing, the Court **DENIES** Plaintiff's Motion and **GRANTS** Commissioner's Motion.

July 12, 2018                                                 /s/
                                                        Charles B. Day
                                                        United States Magistrate Judge

CBD/gbc/mag